## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **NATALIE L.,** <br> **Plaintiff,** <br> vs. <br> **KILOLO KIJAKAZI,** <br> **Acting Commissioner of Social Security,** <br> **Defendant.** | Case No. 2:22-cv-00601-DBP <br><br> MEMORANDUM DECISION <br><br><br> Magistrate Judge Dustin B. Pead |

## I. INTRODUCTION

Plaintiff Natalie L.,[1] seeks judicial review of the decision of the Acting Commissioner of Social Security ("Commissioner"), denying her claim for disability insurance benefits under Title II of the Social Security Act ("Act").[2] After careful review of the entire record along with the parties' briefs,[3] the Court finds the Commissioner's decision is legally sound and supported by substantial evidence. As a result, for the reasons set forth herein, the Decision is hereby affirmed and Plaintiff's Motion for Review of Agency Action is DENIED.[4]

---

[1] Based on privacy concerns regarding sensitive personal information, the court does not use Plaintiff's last name. Privacy concerns are inherent in many of the Federal Rules. *See* Fed. R. App. P. 25(a)(5); Fed. R. Civ. P. 5.2; Fed. R. Crim. 49.1.

[2] 42 U.S.C. § 405(g).

[3] ECF No. 27, Plaintiff's Motion for Review of Agency Action; ECF No. 33, Defendant's Memorandum in Opposition; ECF No. 33, ECF No. 37, Plaintiff's Reply Brief.

[4] ECF No. 27.

## II. BACKGROUND

This case arises out of Plaintiff's third application for disability insurance benefits under Title II of the Act. Following a denial in 2016, Plaintiff applied again in 2017.[5] An ALJ denied that application in 2019, and Plaintiff sought judicial review.[6] While the appeal was pending, on April 27, 2020, Plaintiff filed a new Title II application alleging a disability onset date of August 18, 2014.[7]

In this case, Plaintiff's new claim was denied initially on September 29, 2020, and upon reconsideration on March 8, 2021.[8] Thereafter, Plaintiff pursued her claim to a December 14, 2021, hearing before Administrative Law Judge T. Kim.[9] In a written decision ("Decision") issued on January 28, 2022, Judge Kim applied the five-step sequential evaluation process for determining disability and concluded that Plaintiff was not disabled under the Act.[10]

---

[5] ECF No. 20, Certified Administrative Record ("AR.") 71, 264-65.

[6] AR. 12, 71-81. This court affirmed the Commissioner's 2019 denial of Plaintiff's disability insurance benefits application in *Natalie L. v. Kijakazi,* 631 F. Supp.3d 1114 (D. Utah Sept. 28, 2022).

[7] AR. 217. Although Plaintiff initially alleged that she became disabled in August 2014, an ALJ denied Plaintiff's prior disability application in a decision dated March 20, 2019. AR. 71-81. Because Plaintiff was seeking judicial review of that prior ALJ decision at the same time the ALJ issued his decision in this case, the ALJ in this case considered whether Plaintiff was disabled beginning March 21, 2019, the day after the prior ALJ decision was issued. *See* AR. 12, Decision ("Pursuant to HALLEX I-2-8-16, if claimant files a subsequent application after commencing a civil action on a prior claim, the administrative law judge (ALJ) will limit his or her decision to the time following the period under review by the court"). Accordingly, the ALJ's decision, which this court now reviews, covers the period from March 21, 2019, through June 30, 2020, the date last insured. *Id.*

[8] *Id.*

[9] *Id.*

[10] AR. 12-27; 20 C.F.R. § 404.1520(a)(4) (outlining the process).

At Step 2 of the sequential evaluation, the ALJ found that Plaintiff had the severe impairments of migraine with aura, multiple sclerosis with lower extremity spasticity and paresis, cervical spine degenerative disc disease with stenosis, spondylosis, radiculopathy, obesity, generalized anxiety disorder, major depressive disorder and cognitive impairment.[11] The ALJ determined, however, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.[12] As a result, at Step 5, the ALJ concluded that Plaintiff had the Residual Functional Capacity ("RFC")[13] to perform sedentary work[14] with the following limitations:

> occasionally reach overhead with both upper extremities, She can frequently operate hand controls, reach, push, pull, handle, finger, and feel with both upper extremities. She can occasionally push or pull or operate foot controls with both lower extremities. The claimant can occasionally kneel, crunch, stoop, balance, and crawl, as defined in the SCO and can occasionally climb stairs and ramps. The claimant can never climb ladders, ropes, or scaffolds, and can never be exposed to unprotected heights and moving mechanical parts. The claimant can have occasional exposure to dust, mists, gases, noxious odors, fumes, pulmonary irritants, and poor ventilation. The claimant can tolerate occasional exposure to vibration. The claimant can never be exposed to strobe lights, flashing lights, or to bright lights, such as those found on a theater stage. The claimant requires a moderate noise work environment, as defined in the DOT and SCO. In addition, the claimant is able to understand, carry out, and remember simple instructions and make simple work-related decisions. The claimant can occasionally deal with supervisors and coworkers, and can never deal with the public. The claimant will be off task 10% of the workday. The claimant will be absent from work 1 day per month.[15]

---

[11] AR. 15; 20 C.F.R. § 404.1520(c).

[12] AR. 15-18.

[13] 20 C.F.R. § 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations.").

[14] 20 C.F.R. § 404.1567(a) (defining "sedentary work").

[15] AR 18.

Based on Plaintiff's age, education, work experience and RFC, the vocational expert testified that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of table worker, nut sorter and stone setter.[16] As a result, the ALJ concluded that Plaintiff was not disabled under the Act.[17]

The ALJ's Decision denying Plaintiff's 2020 application became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on July 15, 2022.[18] Plaintiff's September 15, 2022, appeal to this court followed.[19]

### III. STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is narrowly limited to a determination of whether substantial evidence in the record, taken as a whole, supports the factual findings and whether the correct legal standards were applied.[20] On review, the agency's factual findings are considered "conclusive if supported by substantial evidence."[21]

The threshold for substantial evidence is "not high"; it is "more than a mere scintilla" of evidence, and "means---and means only---such relevant evidence as a reasonable mind might

---

[16] AR. 24-25; 20 C.F.R. § 404.1565.

[17] 42 U.S.C. § 423(d)(1)(A) ( to establish disability under the Act, a claimant must prove that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months.").

[18] AR. 1-3; 20 C.F.R. § 404.981.

[19] ECF No. 5, Complaint. This court has jurisdiction over Plaintiff's appeal of the Commissioner's final Decision under 42 U.S.C. § 405(g).

[20] *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).

[21] *Biestek v. Berryhill,* 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g) (internal quotation marks omitted)).

accept as adequate to support a conclusion."[22] In considering the record, the court may neither "reweigh the evidence [n]or substitute [its] judgment for the [ALJ's]."[23] As a result, where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed.[24]

## IV.  DISCUSSION

On appeal, Plaintiff raises two main challenges to the ALJ's Decision. First, she asserts the ALJ failed to "build a logical bridge" between the evidence and his RFC assessment.[25] Second, Plaintiff argues error related to a representational occupation's inconsistency with the RFC and with the ALJ's failure to obtain additional vocational expert testimony based upon her post-hearing submissions. The court addresses each challenged raised by Plaintiff.

### 1.    Substantial Evidence Supports The ALJ's Assessment of Plaintiff's RFC

The ALJ's RFC assessment must address Plaintiff's reported symptoms and represents the most a claimant can do in the workplace.[26] Plaintiff bears the burden of proof in establishing an RFC.[27]

---

[22] *Id.* at 1154 (internal quotation marks omitted).

[23] *Hendron*, 767 F.3d at 954 (citation omitted).

[24] *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

[25] ECF No. 27 at 15.

[26] 20 C.F.R. § 404.1529; SSR 16-3p.

[27] *Howard v. Barnhart,* 379 F. 3d 945, 948-89 (10th Cir. 2004) ("We disagree with claimant's implicit argument that the agency, not the claimant, has the burden to provide evidence of claimant's functional limitations."); *Smith v. Berryhill,* 740 F. App'x 721, 726 (2d Cir. 2018) (summary order)) ("It was ultimately Plaintiff's burden to prove a more restrictive RFC that the RFC assessed by the ALJ.").

In the Decision, the ALJ determined that Plaintiff had the RFC to perform a restricted range of sedentary work which allowed for simple work related decisions, limited social interaction, allowed Plaintiff to be off task 10% of the workday and to be absent from work once per month.[28] When formulating the RFC, the ALJ concluded that Plaintiff did not establish disabling limitations and that her reported symptoms were inconsistent with other evidence.

On appeal, Plaintiff claims remand is required because the ALJ failed to "build a logical bridge between the evidence and his conclusion[s]."[29] The thrust of Plaintiff's claim is that the ALJ failed to connect his conclusion that Plaintiff would be off task 10% of the workday with the limitations imposed by her migraines and fatigue.[30] Here, however, the court finds that the ALJ considered the evidence and developed the record. In doing so, the ALJ concluded that the medical evidence did not support Plaintiff's alleged loss of functioning or level of incapacity and connected this conclusion with the evidence and the RFC.[31] While the ALJ must consider all the evidence, the ALJ is not required to discuss every piece of evidence[32] and the court concludes that the ALJ properly considered the record and there is substantial evidence that supports the ALJ's RFC.[33]

---

[28] AR. 18.

[29] ECF No. 27 at 15.

[30] ECF No. 37 at 4.

[31] AR 19, 24.

[32] *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted).

[33] Plaintiff does not challenge the ALJ's consideration of medical source statements as part of the RFC assessment. It is worth noting, however, that the ALJ found Plaintiff had physical and mental limitations that were more limiting than the prior administrative medical findings and concluded, while inconsistent with other evidence, Plaintiff's reports of disabling symptoms were sufficiently supported such that additional limitations beyond those assessed by state agency consultants were warranted.

### Substantial Evidence Supports The ALJ's Finding That Plaintiff's Reported Symptoms Were Inconsistent With Other Evidence

When determining whether Plaintiff is disabled, the ALJ must consider the Plaintiff's symptoms along with the extent to which those "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."[34] Here, the ALJ acknowledged that Plaintiff's medically determinable impairments could produce the alleged symptoms,[35] but concluded that Plaintiff's statements concerning the limiting effects of her alleged symptoms were not consistent with other evidence.[36] In support, the ALJ cited to both the objective medical evidence and the efficacy of Plaintiff's treatment.[37]

### i. Objective Medical Evidence

Objective medical evidence consists of "medical signs, laboratory findings, or both"[38] and is a "useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms . . . ."[39]

With respect to the objective medical evidence, the ALJ recognized abnormal findings related to Plaintiff's multiple sclerosis.[40] Yet the ALJ also considered findings that showed

---

[34] 20 C.F.R. § 404.1529(a).

[35] AR. 20-22.

[36] AR. 19.

[37] 20 C.F.R. § 404.1529. The ALJ is not required to go factor by factor through the evidence but should set forth the specific evidence upon which the ALJ relied. 20 C.F.R. § 404.1520c(b)(1); *see also Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000).

[38] 20 C.F.R. §§ 404.1513(a)(1), 416.913(a)(1).

[39] SSR 16-3p; 20 C.F.R. § 404.1529(c)(4) ("[W]e will evaluate your statements in relation to the objective medical evidence.").

[40] AR. 20-21.

Plaintiff exhibited largely normal strength and sensation, had a normal range of motion and did not use an assisted device.[41] Additionally, while Plaintiff at times showed abnormal mental status,[42] the objective evidence indicated that Plaintiff exhibited normal mood, affect, behavior, thought process and judgment.[43] Finally, although Plaintiff asserted excessive fatigue,[44] her providers consistently observed Plaintiff as alert and responsive.[45]

An ALJ considers the objective medical evidence supporting a claimant's allegations. Where the objective medical evidence is "inconsistent with [Plaintiff's] subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."[46] Substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[47] Here, there is substantial evidence to support the ALJ's determination that Plaintiff's reported symptoms were inconsistent with other objective evidence and this finding is due "particular deference" by this court.[48]

### ii. Efficacy of Treatment

The efficacy of Plaintiff's treatment is also relevant to symptom evaluation.[49] Regarding her migraines, the ALJ noted that Plaintiff experienced significant improvement with Botox

---

[41] AR. 534, 565, 583, 617.

[42] AR. 22.

[43] AR. 553, 580, 583, 589, 602, 607, 612, 621, 624, 627.

[44] AR. 20-21.

[45] AR. 534, 540, 542, 553, 583, 595, 607, 646, 686.

[46] *Rina C. v. Kijakazi,* 2023 U.S. Dist. LEXIS 64638 at *4 (Cali April 6, 2023) (*citing Smartt v. Kijakazi,* 53 F.4th 489, 498 (9th Cir. 2022)).

[47] *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (quotation omitted).

[48] *White v. Barnhart,* 287 F.3d 903, 910 (10th Cir. 2002).

[49] 20 C.F.R. § 404.1529(c)(3)(iv).

injections. Plaintiff reported that the injections reduced her headaches by 90% and prevented them from becoming disabling.[50] Additionally, the ALJ discussed the efficacy of Plaintiff's treatment for multiple sclerosis noting that medication reduced her pain, her gait improved with therapy and that she had not experienced an acute episode since April 2019.[51]

Overall, while some evidence was suggestive of greater limitations and some of lesser limitations, the ALJ resolved these inconsistencies and concluded that Plaintiff was capable of sedentary work with limitations. The ALJ "was entitled to resolve such evidentiary conflicts" and appropriately did so here tying the objective medical evidence to his conclusions.[52]

> 2. **Substantial Evidence Supports The ALJ's Finding That Plaintiff Could Do Other Work Existing In Significant Numbers In The National Economy**

Next, Plaintiff raises two objections to the ALJ's consideration of the vocational expert's testimony. First, Plaintiff asserts the nut sorter occupation was inconsistent with her RFC. Second, Plaintiff argues that the ALJ failed to address vocational evidence submitted post-hearing.

**The ALJ's Reliance On Nut Sorter Occupation Was Harmless**

The ALJ's reliance on nut sorter was in error as the occupation has a noise level 4 that is inconsistent with the "moderate" noise level allowed under Plaintiff's RFC.[53] But, as noted by the Commissioner, any such error is harmless because the ALJ relied upon two additional occupations identified by the vocational expert: table worker with 35,000 positions in the

---

[50] AR. 19, 508-12.

[51] AR. 20, 544, 565, 587, 593, 597, 609.

[52] *Allman v. Colvin,* 813 F.3d 1326, 1333 (10th Cir. 2016).

[53] Characterizing "moderate" noise level as level 3. *See* Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix D.

national economy and stone setter with 24,000 jobs nationally.[54] The remaining occupations encompass some 59,000 nationwide positions. This court recently determined that reliance upon a similar number of remaining jobs in the national economy (56,000) was significant.[55] As a result, remand on this basis is not warranted.

### The ALJ Reasonably Relied Upon Occupation Numbers Provided By The Vocational Expert

At the December 2021 hearing, the vocational expert testified there were 35,000 table worker and 24,000 stone setter positions nationwide.[56] After the hearing, Plaintiff objected to the job number testimony and submitted a letter referencing "significant discrepancies" based on Job Browser Pro job numbers and "other data taken from the ONET."[57] Based on those submissions, Plaintiff contends an additional hearing is warranted to determine if the numbers provided by the vocational expert, or those provided by Job Brower Pro, are more persuasive. In his Decision, the ALJ rejected Plaintiff's post-hearing objections and affirmed the Dictionary of Occupational

---

[54] AR. 25.

[55] *See Wendy F. v. Kijakazi,* 2023 U.S. Dist. LEXIS 48978 at *11 (D. Utah Mar. 21, 2023) (finding 56,000 remaining jobs sufficient to support harmless error); *see also, Evans v. Colvin,* 640 F. App'x 731, 736 (10th Cir. 2016) (citations omitted) ("[T]here is no bright-line answer to how many jobs are enough for a court to say, as a matter of law, that the number is significant, but the number appears to be somewhere between 100 . . . and 152,000. . ."); *Sawney v. Saul,* 2020 U.S. Dist. LEXIS 173599 at *24 (E.D. Okla. Sept. 22, 2020) (25,000 remaining jobs).

[56] AR. 61-62.

[57] AR. 504. Job Browser Pro is a private company's software program. *see Anders v. Berryhill,* 688 F. App'x 514, 523 (10th Cir. 2017) (noting Job Browser Pro "is not among the examples listed in 20 C.F.R. § 404.1566(d) of data sources considered to provide reliable job information.")

Titles ("DOT") and the Selected Characteristics of Occupation as the confirmed source of baseline for this type of data.[58]

Social Security Ruling 00-4p provides guidance on the agency's use of vocational experts and other reliable occupation information in disability decisions.[59] Specifically, the ruling states that "[o]ccupational evidence provided by a [vocational expert] generally should be consistent with the occupational information supplied by the DOT."[60] Thus, the ALJ must resolve conflicts between the occupational evidence provided by the vocational expert and the DOT.[61] Plaintiff does not point to an unresolved conflict between the vocational expert's testimony and the DOT.[62] Rather, Plaintiff raises a post-hearing conflict between the vocational expert's testimony and a letter from Plaintiff's attorney regarding data obtained that counsel from Job Brower Pro.[63]

Pursuant to SSR 00-4p, there is no requirement that the ALJ resolve a purported conflict stemming from Plaintiff's letter.[64] Indeed, Plaintiff fails to establish the probative value of the letter containing conclusions based upon counsel's personal review of browser pro job numbers

---

[58] AR 26; *see Hearings, Appeals, and Litigation Law Manual (HALLEX)* I-2-6-74.

[59] SSR 00-4p.

[60] *Id.* at *2.

[61] *Id.* at *4.

[62] *Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir. 1999) ("the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

[63] *Anders v. Colvin,* 2015 U.S. Dist. LEXIS 126601 at *32 (D. Utah Sept. 18, 2015) (noting "ALJs may consult occupational information from reliable sources other than the DOT, including VE job placement experience.").

[64] *See Solano v. Colvin,* 2013 U.S. Dist. LEXIS 100080 at *3 (D July 16, 2013) (rejecting evidence from Job Brower Pro stating Commission "not required to explain why an unauthenticated page printed out from a computer screen did not trump the testimony of an expert witness.").

and data from ONET.[65] The letter is not probative evidence that gives rise to an established conflict or inconsistency that the ALJ must resolve.[66]

## V. CONCLUSION

Accordingly, for the reasons stated, the court finds that the ALJ's decision is supported by substantial evidence and is legally sound and therefore AFFIRMS the Commissioner's Decision and DENIES Plaintiff's Motion for Review of Agency Action.[67]

Dated this 21st day of August, 2023.

_____
DUSTIN B. PEAD
Chief United States Magistrate Judge

---

[65] AR. 504, December 14, 2021 letter from Plaintiff's attorney Joel Ban to Judge Kim.

[66] *See Wischmann v. Kijakazi,* 68 F.4th 498, 507 (9th Cir. 2023) (letter and six pages of printouts provided by Plaintiff fail to provide "information about what queries were entered into the computer program, what variable were changed, or what filters were applied to the data. . . [additionally," there is no indication as to "what version of the program was used" or "how the job numbers were produced.").

[67] ECF No. 27.